Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* School District of Philadelphia, Respondent.

Argued November 13, 1979, before Judges WILKIN-SON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*David J. DeVries*, Deputy Attorney General, with him *James R. Adams*, Chief Counsel, *Paul Schilling*, Deputy Attorney General, *Norman T. Watson*, Deputy Attorney General, and *Gerald Gornish*, Attorney General, for appellants.

*Andrew M. Rosen*, Assistant Counsel, with him *Roberta Griffin Mason* and *Eugene F. Brazil*, General Counsel, for respondents.

OPINION BY JUDGE MACPHAIL, February 13, 1980:

This is an appeal from an order of the Board of Arbitration of Claims (Board), now the Board of Claims, awarding a judgment of $464,076.75 in favor of the School District of Philadelphia (Claimant) and against the Pennsylvania Department of Public Welfare (DPW). We reverse.

Under date of April 1, 1970, Claimant and DPW entered into a contract under which Claimant agreed to provide day care services[1] in exchange for reimbursement of 75 Percent of Claimant's actual expenditures up to the limit of each major budget category specified in the contract. Under the contract Claimant was entitled to exceed a budget category by 10 percent with prior DPW approval, provided that the total budget was not exceeded. On expiration of the contract Claimant was to return excess monies to DPW. By the terms of the contract DPW agreed to pay Claimant in advance on the basis of monthly invoices estimating Claimant's needs. Beginning with the third month of the contract Claimant was obligated to submit monthly statements of actual expenditures and the monthly invoices were adjusted to take into account the difference between advanced payments and actual expenditures. At the expiration of the contract on June 30, 1971, Claimant had exceeded neither the budget category for staff costs nor the total budget.

On September 21, 1971, Claimant's Board of Education authorized its superintendent to pay retroactive salary increases to certain staff members and on November 19, 1971, pursuant to the Board's resolution, the sum of $502,900.00 was paid to those employees *for the contract year 1970-71.* In addition, the retroactive raise resulted in an increase of employee benefits of $62,863.00 and administrative costs of $53,006.00. Some time thereafter[2] Claimant submitted a final in-

---

[1] The official name of the program was "Get Set Day Care Program."

[2] In its complaint, Claimant states that it sent its final invoice for the 1970-71 contract year on November 28, *1972.* Claimant's testimony to the Board was that it *re*submitted its final invoice on that date. The Board found that Claimant "timely" submitted its final invoice. While the exact date upon which the invoice was submitted is immaterial to our decision, we do note that the Board's brief states that the invoice was submitted November 28, *1971.*

voice for the 1970-71 contract year including adjustments for food expenses and for the retroactive salary increases. DPW reimbursed the former but refused to reimburse the latter. Claimant subsequently successfully sued before the Board to recover the portion of the salary increase reimbursable by DPW under the terms of the contract.

DPW contends here as it did before the Board that (1) the claim was untimely filed and (2) it was not obligated under the contract to reimburse Claimant for the retroactive salary increase. DPW argues that the Board erred as a matter of law in resolving both issues against it. We agree.

Section 6 of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-6, states in pertinent part:

> The Board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued.

This Court has construed Section 6 to mean that the Board's jurisdictional period begins to run "from the time the cause of action accrues; that is, from the time when the injured party is first able to litigate his claim." *Allen N. Lashner, Inc. v. Department of Highways,* 1 Pa. Commonwealth Ct. 486, 489, 275 A.2d 403, 405 (1971).

In the instant case, paragraph 10 of Claimant's Statement of Claim states:

> On June 29, 1973, Regional Office sent School District a letter advising School District that the items indicated in paragraph 5 would not be paid, citing a legal opinion of Paula Gold, Esquire, assistant attorney general, which opinion was dated April 11, 1973. (A copy of Department's letter of June 29, 1973, and of Ms. Gold's opinion are attached hereto and marked Exhibits 'H' and 'I'.)

The letter from DPW referred to by Claimant reads in pertinent part as follows:

This is to let you know that because of the attached Justice Department opinion, we are unable to recommend full payment of the 1970-71 final invoice as submitted.

Mrs. Gold reviewed the September, 1971 School Board resolutions that you supplied after the invoice, pertaining to the retroactive salaries, fringe benefits and administrative overhead costs in the invoice.

It was her opinion that these resolutions regarding retroactive funds were not binding on the state after a contract had expired.

Since the State Comptroller's Office will not accept invoices with disallowances, please resubmit an invoice for the food item that has been approved so that can be processed by Mr. Johnson's deadline date of July 13, 1973.

The opinion of Paula Gold, Esquire reads as follows:

I have examined the final invoice submitted by the Get Set Day Care Program and the contracts we have with the Board of Education re this program.

It is my opinion that there is no legal basis to approve the expenditure of $502,900 and $62,863 representing retroactive salary increases and fringe benefits.

It seems clear to us that the letter is an unequivocal denial of Claimant's claim. Claimant argued successfully to the Board that it, Claimant, interpreted the letter to mean that although DPW would not reimburse for the salary increases during the 1970-71 contract year, it would do so during the 1971-72 contract year. Such an interpretation of the plain language of the letter and the opinion which accompanied it, is clearly impossible.

Claimant also contended to the Board successfully that the fact that DPW did approve a food expense item submitted on the same final invoice as the salary increase is an indication that DPW would reimburse Claimant *sometime* for that expense. While it is certainly true that DPW did authorize the food expense,[3] nothing in the letter could be construed to indicate that that approval implied subsequent payment of the salary increase. The language of the letter and accompanying legal opinion are quite to the contrary. We hold that Claimant's claim "accrued" when it received the DPW letter of June 29, 1973.[4]

Our conclusion is directly contrary to the Board's finding that it is the letter from DPW dated November 7, 1973 which Claimant contends it did not receive until September 13, 1974 that fixes the date on which the claim accrued. Actually, what occurred was that when Claimant received the denial letter of June 29, 1973, it *resubmitted* the claim for reimbursement as an invoice for the contract year 1971-72 on the supposed theory that that was what DPW intended by its letter of June 29. Again, we repeat, it defies logic and reason to conclude that the letter of June 29 was anything other than a complete, unequivocal and final denial of liability by DPW. This is further reinforced by the language of the letter from DPW under date of November 7, 1973 which refers specifically to its denial of liability in its letter of June 29, 1973.

Inasmuch as Claimant did not file its statement of claim until January 17, 1975, the claim was untimely filed and the Board lacked jurisdiction to hear it. *Lashner v. Department of Highways, supra.*

---

[3] The food expense was *incurred* during the 1970-71 contract year and payment was clearly authorized by paragraph 13 of the contract.

[4] Although Claimant states that it did not receive other correspondence from DPW, it does not deny that it received the letter of June 29, 1973 in the regular course of business.

Because of the substantial amount of money involved and the possibility of a further appeal, we deem it advisable, if not necessary, to set forth why we believe the Board also erred when it held that DPW was obligated to pay Claimant notwithstanding the fact that the salary increase was authorized after the close of the contract year. In reaching its conclusion on this matter, the Board applied the doctrine of promissory or equitable estoppel and Sections 1-205, 2-208, and 2-209 of the Uniform Commercial Code (Code), Act of April 6, 1953, P.L. 3, *reenacted* October 2, 1959, P.L. 1023, 12A P.S. §§1-205, 2-208 and 2-209.

At the outset, it must be observed that the provisions of the Code are applicable to "commercial transactions"[5] and that Article 2 of the Code is specifically limited to the present or future sale of *goods*.[6] The contract at issue here clearly falls outside of the provisions of the Code.

While the Board uses "equitable" and "promissory" estoppel as synonymous terms, in law they are not. A promissory estoppel rests upon the promise to do something in the future, whereas an equitable estoppel rests upon a statement of a present fact. *Langer v. Superior Steel Corp.*, 105 Pa. Superior Ct. 579, 161 A. 571 (1932). Of more importance, however, is the fact that an estoppel does not *create* a cause of action at law and, unless a plaintiff can first show a cause of action, estoppel will not supply one for him in an action at law. *City of Pittsburgh v. Commercial Casualty Insurance Co.*, 106 Pa. Superior Ct. 254, 161 A. 630 (1932). Here, Claimant sues upon a contract. Paragraph 13 of the contract states:

Payment by the Department shall be made, in advance, on the basis of monthly invoices submitted in triplicate. Each monthly invoice

[5] Section 1-102 of the Code, 12A P.S. §1-102.

[6] Section 2-106 of the Code, 12A P.S. §2-106.

will be for the School District's estimated needs for that month, but this estimate shall not exceed ten (10%) percent of the total annual budget. The School District shall, also submit monthly statements of actual expenditures for the second preceding month. The monthly invoices will be adjusted downward by the School District's certified obligation per item 11 above. The invoice will also be adjusted to take into account actual expenditures for the second preceding month.

As we have noted previously, what actually occurred in the instant case was the adoption of a resolution by Claimant more than 2½ months after the contract expired. The invoice submitted by Claimant was not a monthly invoice for estimated needs for the month of September nor was it a monthly statement of *actual* expenditures for the second preceding month prior to its submission to DPW as was true in the case of the food expenditures. Therefore, once the contract expired, there was no continuing obligation of DPW to make any payments thereunder.[7] Since Claimant demonstrated no cause of action, the presence or absence of estoppel is irrelevant.

We conclude that Claimant cannot recover any part of the retroactive salary increase.

### ORDER

AND Now, this 13th day of February, 1980, the order of the Board of Arbitration of Claims, dated September 19, 1978, awarding judgment to the Philadelphia School District and against the Pennsylvania Department of Public Welfare is reversed and judgment is entered in favor of the Pennsylvania Department of Public Welfare.

---

[7] Again, as we have previously noted, the food expense was an actual expense incurred during the term of the contract and its payment was clearly authorized by the provisions of the contract.

Judge ROGERS concurs in result only.

Judge DISALLE did not participate in the decision in this case.