509 A.2d 950

Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner *v.* Town Court Nursing Center, Inc., Respondent.

Argued April 10, 1986, before Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Bruce G. Baron,* Assistant Counsel, for petitioner.

*Jeffrey B. Albert,* of Counsel: *Fox, Rothschild, O'Brien & Frankel,* for respondent.

OPINION BY JUDGE CRAIG, May 21, 1986:

The Department of Public Welfare appeals from an order of the Board of Claims directing DPW to reimburse Town Court Nursing Center, Inc. for nursing services provided to patients eligible for medical assistance from September 3, 1975 to April 14, 1976. We affirm.

The facts in this case are not in dispute; the parties submitted a stipulation of facts to the Board of Claims.

In 1968, the Department of Health issued a skilled care nursing license to Town Court to begin operation. On November 1, 1973, Town Court entered into a skilled nursing care provider agreement with DPW under the medical assistance program for its 138-bed facility. That agreement was renewed through October 31, 1974.

On September 30, 1974, the Department of Health, Education and Welfare (HEW) decertified Town Court as an eligible Medicare provider effective October 31, 1974.

In October 1974, DPW decertified Town Court as an eligible medical assistance provider effective November 30, 1974. Town Court timely appealed its medical assistance decertification. That appeal stayed the decertification decision of DPW pending recertification or the conclusion of the appeal process.

On September 3, 1975, Town Court opened a new addition to its nursing home facility which increased its bed capacity from 138 to 198. Also on that day, Town Court reapplied with DPW for certification as a skilled nursing care provider eligible for participation in the medical assistance program.

DPW conducted an inspection survey on September 3, 1975, and informed Town Court that its facilities had satisfied the federal requirements under Title 18 and Title 19. The survey team's oral approval of the facility was an accepted practice. After giving oral approval, the survey team began to talk with Town Court management about bringing in relocation patients.

On May 11, 1976, HEW accepted Town Court for participation in the federal Medicare program retroactive to September 3, 1975.

On May 24, 1976, Town Court and DPW entered into a skilled nursing care provider agreement under the medical assistance program. That agreement was retroactive to September 3, 1975 for the 198-bed facility.

By letter dated July 19, 1976, HEW notified Town Court that its earlier action authorizing Town Court's participation in the Medicare program retroactive to September 3, 1975 was rescinded. The new effective date of its participation in the Medicare program was stated as April 14, 1976.

By letter dated August 3, 1976, DPW notified Town Court that it was amending the term of the 1976 provider agreement to be effective for the period April 14, 1976 through April 30, 1977.

Town Court then filed the reimbursement claim now before us.

The three issues in this case are (1) whether the Board of Claims had subject matter jurisdiction, (2) whether Town Court's claim was timely, and (3) whether the doctrine of estoppel is applicable to the claim for medical assistance reimbursement.

*Subject Matter Jurisdiction in the Board of Claims*

This case involves two public medical assistance programs. One is the federal Medicare program set forth in Title 18 of the Social Security Act, 42 U.S.C. §1395. The Secretary of HEW administers that program through designated state agencies. Medicare is federally funded. The public assistance program directly at issue here is Pennsylvania's medical assistance program, 62 P.S. §441.1-493. Medical assistance benefits individuals whose income and other resources fall below prescribed levels by reimbursing providers for a variety of medical costs, including in-patient care in a qualified nursing home. Pennsylvania and the federal government jointly fund the medical assistance program, with the federal

government reimbursing Pennsylvania for a certain percentage of the costs of the state program. To be eligible for reimbursement, Pennsylvania's medical assistance program must comply with the requirements of the federal Medicaid statute, Title 19 of the Social Security Act, 42 U.S.C. §1396.

The Board of Claims has exclusive jurisdiction to hear and determine contract claims against the Commonwealth in excess of $300.[1] DPW argues that, because the Social Security Act provided Town Court with a federal administrative forum under 42 U.S.C.A. §1395ff(c) to appeal its HEW decertification, and because DPW was required by law to mirror the actions of HEW under 45 C.F.R. §§249.33(a)(9), 249.33(a)(10), the federal administrative remedy was exclusive.

DPW continually justifies its decision to follow HEW's decision to rescind the retroactive agreement by relying on a federal regulation requiring DPW to mirror determinations of HEW. That regulation, 45 C.F.R. §§249.33(a)(9), 249.33(a)(10), was not enacted until October 1, 1976, and is therefore not applicable to DPW's action in August, 1976.

Moreover, as the Board of Claims correctly noted, this case does not challenge a license suspension or revocation. This case presents a claim for reimbursement for services rendered to the Commonwealth. This court has held that the Board of Claims has jurisdiction over all contractual claims, either express or implied. *Children's Rehabilitation Center v. County of Allegheny*, 44 Pa. Commonwealth Ct. 172, 403 A.2d 640 (1979). Accordingly, the Board of Claims correctly determined that it had subject matter jurisdiction over Town Court's claim for reimbursement under its provider agreement with DPW.

---

[1] Section 4 of the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-4.

DPW further attacks the jurisdiction of the Board of Claims by asserting that HEW was an indispensable party in the action. DPW claims that, because HEW had an interest in precluding payments to Town Court, the Board of Claims could not protect that interest and was not the proper forum. DPW argues that upholding the jurisdiction in the Board of Claims would frustrate federal authority to enforce the provisions of the Social Security Act.

In *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 279 (1978), the federal court of appeals addressed the issue of the interrelatedness of a claim against the Commonwealth's medical assistance program and that of a claim against the federal Medicare program, stating:

> The complaint alleged that [the Commonwealth] has an obligation independent of the availability of federal reimbursement to continue Medicaid payments. . . . Since the action against [the Commonwealth] thus rests on a basis independent from that supporting the claim against [the federal government], we do not believe that it is an 'action against the United States'. . . .

Similarly, Town Court's claim for reimbursement under its provider agreement with the medical assistance program is independent of the availability of federal reimbursement. Hence, Town Court's action against the Commonwealth here cannot be construed as an action against HEW.

### Timeliness of Town Court's Claim

Town Court initially filed its claim under the Fiscal Code jurisdiction of the original Board of Claims on September 6, 1978.[2] On October 5, 1978, the legislature created a new Board of Claims.[3] Shortly after the

---

[2] Fiscal Code, Act of April 9, 1929, P.L. 343, art. X, §1003, 72 P.S. §1003.

[3] Act of October 5, 1978, P.L. 1104.

passage of that Act, the Auditor General and State Treasurer forwarded all cases pending before the old Board of Claims to the new Board of Claims. Consequently, Town Court's claim was transferred to the new Board of Claims but retained its filing date of September 6, 1978.

DPW asserts that the September 6, 1978 filing of Town Court's claim was barred by the six-month statute of limitations.[4] The issue is when the cause of action against DPW accrued.

This court has held that the Board of Claims' jurisdictional period begins to run from the time when the injured party is first able to litigate the claim. *Department of Public Welfare v. School District of Philadelphia*, 49 Pa. Commonwealth Ct. 316, 410 A.2d 1311 (1980). In that case, we determined that a letter from DPW constituted an unequivocal denial of the injured party's claim and began the running of the statute of limitations. Here, DPW argues that the December 6, 1977 letter from the assistant attorney general, stating that DPW could not honor Town Court's request for payment for services rendered during the rescinded period, triggered the statute of limitations. Because that letter cited repealed statutory authority as the legal basis for the assistant attorney general's opinion, that letter cannot be considered an unequivocal denial of the claim.

On March 8, 1978, Town Court received another letter from the assistant attorney general's office rejecting Town Court's claim for payment. That letter further stated, however, that the matter was being submitted to the Department of Justice for review and that the attorney general's office would inform Town Court of the De-

---

[4] Section 6 of the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-6.

partment of Justice's decision. On June 19, 1978, Town Court received a letter from the acting attorney general flatly denying Town Court's claim.

The Board of Claims implicitly rejected DPW's statute of limitations argument by deciding the case. Because both the letter of March 8, 1978, denying the claim while referring it to the Department of Justice, and the letter of June 19, 1978, flatly denying the claim, fall within six months of the September 6, 1978 filing date, further evaluation of which letter constituted unequivocal denial of the claim is not necessary. Accordingly, the Board of Claims properly determined that Town Court's claim was not barred by the applicable statute of limitations.

*Whether DPW Was Estopped from Denying Town Court's Claim for Reimbursement*

DPW argues that the Board of Claims' decision is based upon a misapplication of the principle of estoppel. DPW cites our decision in *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 463 A.2d 118 (1983), as dispositive of that assertion. In that case, this court held that, where a provider has a duty to know the law, the provider cannot claim reasonable reliance on actions by agency officials that are contrary to the law, and that DPW was not estopped by alleged misrepresentations of an auditor. Here, the Board of Claims' reasoning in applying the doctrine of estoppel was not premised on a reasonable reliance on actions by an agency official. Rather, the board's application of the doctrine of estoppel was premised on Town Court's reasonable reliance on an agreement entered into with the agency.

The provider agreement between Town Court and DPW reads, in pertinent part:

A. *Nursing Home Responsibilities*

. . . .

1. Meet Federal and State Standards and Requirements for Skilled Nursing Home Operation and Care and be certified to participate as a provider of extended care under Title XVIII *or* be approved and licensed by the Department to operate a Skilled Nursing Home. (Emphasis added.)

That provider agreement does not contain language conditioning DPW reimbursement on federal certification. Rather, the provider was required to meet the federal and state standards for skilled nursing home operation and care and, *either* have federal certification *or* be licensed by the Department of Health to operate a skilled nursing home.

There is no dispute that as of September 3, 1975, Town Court had Department of Health certification to operate a skilled nursing home and that Town Court met DPW standards for operating the facility. In a letter from HEW to Town Court, dated March 8, 1977, HEW explained its decision to rescind federal certification from September 3, 1975 to April 14, 1976. HEW stated that there were two distinct requirements for readmission into the Title XVIII program: Correction of deficiencies, followed by reasonable assurance of continued compliance. HEW conceded that, as of September 3, 1975, Town Court was in compliance with federal standards because it had corrected the disqualifying deficiencies. However, because HEW discovered additional deficiencies in December 1975, HEW determined that Town Court had failed to establish reasonable assurance of continued compliance, thus barring federal recertification.

In accordance with the language of the provider agreement, Town Court was in compliance with federal and state standards for operating a nursing home and had a state license to operate a skilled nursing home

when it entered into the provider agreement with DPW on September 3, 1975.

The issue is whether DPW was estopped from denying reimbursement to Town Court under a validly executed provider agreement even though Town Court did not have federal certification throughout the life of the agreement. In *Divine Providence Hospital,* at 191-192, 463 A.2d at 120, we stated that:

> The elements of estoppel are: (1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; (3) no duty to inquire on the party seeking to assert the estoppel.

Here, Town Court established that DPW gave oral approval of its facilities on September 3, 1975, and reduced that agreement to writing on May 24, 1976, retroactive to September 3, 1975. Town Court relied on DPW's approval and performed services for which DPW was obligated to pay under the terms of the provider agreement. Further, Town Court had no duty to check continually with DPW to insure that its provider status remained intact. Therefore, the Board of Claims correctly decided that DPW was estopped from denying Town Court's claim for reimbursement under its provider agreement.

## Conclusion

After requesting DPW to inspect its facilities[5] and receiving its approval, Town Court provided nursing

---

[5] Apparently DPW's initial refusal to pay Town Court for services rendered was premised upon an unwritten regulation promulgated by the Pennsylvania Department of Justice in 1974. That unwritten regulation provided that, although an administrative appeal would stay the effect of a decertification order, if the provider increased its bed capacity during the pendency of the appeal,

services to eligible medical assistance patients from September 3, 1975 through April 14, 1976. A decade later, this court is faced with the difficult task of reviewing the validity of Town Court's claim for reimbursement, complicated by ten years of continually changing statutory and case law affecting both the state medical assistance program and the federal Medicare program.

This case is also unique in that it involves a claim for payment during a period of time when the facility had certification to receive both state and federal reimbursement, only to have that certification later rescinded after it had provided the contracted services.

The claim at issue here could have been avoided had HEW immediately contacted DPW in December of 1976 after HEW determined that Town Court's program was again deficient.

Federal Social Security and state medical assistance law is designed to permit the regulating agencies to bar deficient providers from receiving compensation under their assistance programs on a prospective basis. Case law supports the Board of Claims' rejection of DPW's attempt to rescind the provider agreement *after* Town Court had already provided the services.

In *Town Court v. Beal*, 586 F.2d at 270, the court stated:

---

the increased bed capacity would not benefit from the stay. Hence, when Town Court increased its bed capacity on September 3, 1975, it continued to be reimbursed for patients in "old" beds, but it did not receive reimbursement for medical assistance patients in "new" beds. In its brief, Town Court correctly asserts that an agency cannot rely on unpublished regulations. However, DPW did not pursue its reliance upon that regulation before the Board of Claims; in the stipulation of facts submitted to the board, DPW conceded that costs for services provided to patients in the new addition would be included. Therefore, further evaluation of this unpublished regulation issue is not necessary.

A prescribed period of time must elapse between notice of termination to the facility and to the public and the effective date of termination.

. . .

The court further stated:

We note in this regard that Town Court was always aware that the results of the Medicare certification survey would determine not only its continued ability to participate in the Medicare program, but also its continued ability to participate in the Medicaid program as well.

586 F.2d at 280.

Accordingly, we must affirm the order of the Board of Claims.

## ORDER

Now, May 21, 1986, the order of the Board of Claims, dated May 22, 1985, is affirmed.