551 A.2d 1138

Chester Extended Care Center, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

208

Argued November 3, 1988, before Judges DOYLE and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*Jeffrey B. Albert,* with him, *Fox, Rothschild, O'Brien & Frankel,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, December 19, 1988:

This is an appeal by Chester Extended Care Center (CECC) from an order of the Office of Hearings and Appeals (OHA) of the Department of Public Welfare (DPW) which rejected a hearing attorney's recommendation and denied CECC's appeal.

The basic facts are not in dispute. In January 1984, CECC received a notice from the Pennsylvania Department of Health (DOH) advising it that its license to operate its skilled nursing care facility was being revoked effective January 6, 1984. CECC appealed this action which had the effect of staying the revocation. On January 18, 1984, the United States Department of Health and Human Services (HHS) advised CECC that it would be terminated from participation in the Medicare program effective March 16, 1984. This action was not appealed. Subsequently, DPW, on February 7, 1984, notified CECC that it was terminating it from participation in the Pennsylvania Medical Assistance Program.[1] CECC, wishing to retain its certification, requested another DOH survey. As a result of the survey, DOH concluded that CECC satisfied the conditions for licensure. Based upon the survey and a plan of correction submitted by CECC, the facility and DOH entered into a settlement agreement.

Under the agreement DOH promised, *inter alia,* to issue CECC a six-month provisional license, to remove the suspension placed upon new admissions at the facility, and to recommend to HHS that CECC remain fully certified under the Medicare and Medical Assistance Programs. In exchange CECC paid a fine and agreed to remain in substantial compliance with regard to the regulations pertaining to licensure. Both parties performed their obligations under the agreement and on March 8, 1984, DOH forwarded information to HHS including a recommendation that the facility's participation in the federal program be permitted to continue. Following March 16 (the effective date of termination in the federal program) DOH continued to inspect the fa-

---

[1] DPW, although it channels the medical assistance payments to nursing facilities, is not the agency which licenses those facilities; licensure is handled by DOH.

cility and DPW continued to make interim payments for Medical Assistance.

In mid-April of 1984, DOH received a response from HHS to its letter recommending continuation of CECC in the federal program. In its response, HHS indicated that CECC was no longer federally certified and had not sought readmission to the program and, hence, there was no action HHS could take in response to the DOH letter of recommendation. The HHS letter was not sent to CECC. CECC, upon learning of this response, sent a letter dated April 19, 1984 to DOH requesting permission to reapply for the Medicare Program. Accordingly, DOH then conducted another survey and again recommended that CECC be entitled to participate in the Medicare and Medicaid Programs. In November 1984, however, HHS denied CECC readmission into the program. On November 13, 1984, DPW by letter advised CECC that any funds which it received for skilled nursing services provided after March 16, 1984 would be subject to recoupment. CECC appealed this action and a DPW hearing attorney recommeded that the appeal be sustained. OHA rejected the recommendation and held that the sum at issue could be recouped. This appeal followed.[2]

Before considering the merits of the recoupment action, we also note certain other events which transpired. The sale of CECC, which had been scheduled for settlement as early as March 1984, was completed on August 15, 1984. In December 1984, DPW entered into a special provider agreement with the new owners of the facility which indicated that the new owners were liable for monies owed by the facility to DPW. This

---

[2] The Secretary of DPW granted reconsideration but not in a timely fashion. The OHA order, however, was timely appealed and, thus, is properly before us.

agreement did not reference the presence or absence of certification after March 16, 1984. This change in ownership also apparently resulted in HHS's November 1984 denial of readmission into the program being sent to the wrong address. CECC contends that the denial notice was sent to the facility's old address and was not received by the facility until the period for appeal had passed. That issue, however, pertains to action by a federal agency and is not before us.

Our scope of review over DPW's determination to recoup the funds at issue is limited to determining whether the OHA's findings of fact are supported by substantial evidence and whether there has been a constitutional violation or error of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. On appeal CECC raises two arguments. First, it contends that DPW should be estopped from recouping the monies because, by its action of making interim payments without objection or protest, it treated CECC as though it were a qualified participant in the federal program. Alternatively, the facility contends that recoupment should not be permitted because it would effect an unjust enrichment on the Commonwealth.

We begin our analysis by recognizing that DPW is authorized by law to make Medical Assistance payments only to facilities which are qualified to participate under Title XIX of the Federal Social Security Act.[3] Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §443.1[4] pertinently provides:

> The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians:
>
> . . .

---

[3] 42 U.S.C. §1396 *et seq.*

[4] Section 443.1 was added by Section 5 of the Act of July 31, 1968, P.L. 904.

(3) Rates on cost-related basis established by the department for skilled nursing home or intermediate care in a non-public nursing home, when furnished by a nursing home licensed or approved by the department and qualified to participate under Title XIX of the Federal Social Security Act.

It is not disputed that for the time period at issue CECC was not qualified under Title XIX and, thus, did not meet the conditions for Medical Assistance payments set forth in Section 443.1. Therefore, it was terminated by DPW from the Medical Assistance Program. Providers are statutorily prohibited from receiving Medical Assistance payments for services rendered during a period of such termination. Section 1407(c)(2) of the Public Welfare Code, 62 P.S. §1407(c)(2).[5] And, DPW's regulations authorize it to seek restitution for any payments which it should not have made. 55 Pa. Code §1101.83(a).

Despite this statutory and regulatory authority, CECC maintains that under *Department of Public Welfare v. Town Court Nursing Center, Inc.*, 97 Pa. Commonwealth Ct. 380, 509 A.2d 950 (1986), *petition for allowance of appeal denied*, 515 Pa. 595, 528 A.2d 603 (1987), and *Eye & Ear Hospital v. Department of Public Welfare*, 100 Pa. Commonwealth Ct. 363, 514 A.2d 976 (1986), it is entitled to keep the interim payments under principles of estoppel. In *Town Court*, DPW sought to terminate retroactively a provider agreement it had entered into. In that case a federal decertification of the facility had occurred in October 1974. DPW then decertified the facility under the state Medical Assistance Program. An appeal stayed the DPW determina-

---

[5] Section 1407 was added by Section 3 of the Act of July 10, 1980, P.L. 493.

tion and in the interim the facility opened an addition. It also applied to DPW for recertification. DPW conducted a survey and gave oral approval to the facility on September 3, 1975. On May 11, 1976, the Department of Health Education and Welfare (HEW) accepted the facility for federal participation retroactive to September 3, 1975. On May 24, 1976, DPW and the facility entered into a provider agreement retroactive to September 3, 1975. In July 1976, HEW rescinded its May 1976 action insofar as it was retroactive and informed the facility that its effective date of participation was April 14, 1976. Again, DPW copied this action. The facility sought reimbursement from DPW for the time period from September 3, 1975 to April 14, 1976. This Court held, *inter alia,* that there was a valid provider agreement between DPW and the facility for the time period in question. We further held that because the provider agreement required the facility to be certified under Title XIX *or* to be approved and licensed to operate a skilled nursing home, and because the second of these two conditions had been met for the time period in question, the provider's reliance upon the terms of the provider agreement was reasonable and, hence, DPW could be estopped from denying reimbursement. We distinguished *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 463 A.2d 118 (1983), by explaining that a provider cannot reasonably rely upon an agency's actions which are contrary to law because a provider has a duty to know the law. We indicated that Town Court had not relied upon agency actions, but upon the terms of the provider agreement itself. In the instant case, DPW had terminated the provider agreement for the time period in question. Thus, unlike *Town Court,* there was no agreement upon which CECC could claim reliance. Instead, it relied upon the agency's actions, which ac-

tions were contrary to law. But, as we explained in *Town Court* and *Divine Providence*, reliance upon such factors cannot be a basis for asserting estoppel.

In *Eye and Ear*, we held that DPW acted improperly in failing to extend to the provider a waiver of enforcement of a new regulation. In that case, DPW itself created confusion when it enacted a new regulation which failed to state specifically whether DOH approval was needed for hospitals "Short Procedures Units" before Medical Assistance reimbursements for services rendered in such units would be allowed. It acknowledged the confusion by ultimately publishing a clarifying bulletin. Further, it waived compliance with the regulation for the period prior to the issuance of the clarifying bulletin. It refused, however, to extend the waiver period long enough to allow facilities that believed a DOH approval was unnecessary to obtain the required approval. We ruled that such action constituted an abuse of discretion. In the instant case, no regulations are challenged as being unclear. And, thus the general rule that a provider that operates under and seeks benefits from a government-funded program must be charged with knowledge of the applicable regulatory scheme applies. *See id.*

It is well settled that the elements of estoppel are (1) misleading words, conduct, or silence by the party against whom estoppel is sought, (2) unambiguous proof of a reasonable reliance on a misrepresentation by the party seeking to assert an estoppel, and (3) the lack of a duty to inquire on the party seeking to assert the estoppel. *Town Court; Divine Providence.* Here, OHA held that the facility was responsible for determining its legal status in light of the federal decertification and DPW's termination and further opined that the state regulations clearly set forth the requirements for participation in the Medicaid Program. It thus determined

that estoppel would not properly lie in this case. The OHA conclusion is in accordance with established precedent and, thus, we concur with its determination that to the extent CECC relied upon the interim payments as an indication that it was statutorily entitled to the monies such reliance was not reasonable.[6]

CECC also relies upon *Governor's Energy Council v. American Energy Services, Inc.,* 90 Pa. Commonwealth Ct. 168, 494 A.2d 72 (1985), wherein the Council accepted a contract bid submitted by American Energy Services and advised the contractor to begin work immediately. The contractor was further advised that the Council would reimburse him for expenses in the event that final contract approval was not obtained. Ultimately, the contract was rejected by the Department of Energy. The contractor sought reimbursement for monies expended and this Court held that the Council was equitably estopped from denying its liability for such services. That case does not, however, involve a situation where a statute precluded payment for services actually rendered. Accordingly, we do not find it to be applicable to the instant situation.

CECC alternatively argues that the Commonwealth will be unjustly enriched if it is permitted to recoup its monies since services were, in fact, provided by CECC. We acknowledge this point and we have examined closely all the cases cited· to us in which a theory of quantum meruit was applied. But in no case cited did the application of·that principle result, as it would here, in a clear violation of statutory law. The legislative purpose in requiring federal certification as a precondition

---

[6] While the hearing attorney's recommendation was to the contrary, the OHA is the finder of fact in provider cases. *Northwestern Insitute of Psychiatry v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 213, 513 A.2d 495 (1986).

to being entitled to receive state funds is clear. Unless federal qualifications are met the state risks loss of federal matching funds. The legislature has empowered DPW to take necessary steps to render the Commonwealth available for such funds. *See* Section 201(2) of the Public Welfare Code, 62 P.S. §201(2). DPW has done just that.

In summary, we can find no authority for ordering the relief requested here.[7] It is for this reason that we must, unfortunately, affirm the OHA order.

ORDER

Now, December 19, 1988, the order of the Office of Hearings and Appeals in the above-captioned matter is hereby affirmed.

---

[7] The law clearly appears unhelpful to CECC. "[I]t is well settled that in case of the government, states, and even municipalities, money paid by mistake may be recovered." *United States v. Hart,* 12 F. Supp. 596, 597 (E.D. Pa. 1935), *affirmed,* 90 F. 2d 987 (3d Cir. 1937).