586 A.2d 379

**CHESTER EXTENDED CARE CENTER, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 26, 1990.

Decided Feb. 7, 1991.

Jeffrey B. Albert, Philadelphia, for appellant.

Bruce G. Baron, Mary Frances Grabowski, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADOKAS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented by this appeal is whether the appellee, Commonwealth of Pennsylvania, Department of Public Welfare (DPW), is estopped by its conduct from recovering approximately $250,000 in payments made to the appellant, Chester Extended Care Center, for the care of Medical Assistance patients at appellant's skilled nursing facility during a five month period in 1984, after appellant's participation in the Medical Assistance program had been terminated.

On January 6, 1984, appellant's license to operate a skilled nursing facility in Chester, Pennsylvania, was revoked by the Commonwealth of Pennsylvania, Department of Health (DOH). By letter dated January 18, 1984, the United States Department of Health and Human Services (HHS) notified appellant that appellant was being terminated from participation in the Medicare program [1] as of February 15, 1984, at which time no new Medicare patients could be accepted at the facility. Payments for those

---

**1.** Title XVIII of the Social Security Act, Health Insurance for Aged and Disabled, 42 U.S.C.A. §§ 1395–1395ccc (1990 Supp.Pamph.). This action by HHS had been taken as a result of appellant's failure in late 1983, to remedy conditions violative of statutory and regulatory requirements for skilled nursing care facilities participating in the Medicare and Medical Assistance programs.

Medicare patients already residing at the facility were to cease within thirty days from the date of termination. By letter dated February 7, 1984, DPW, which administers the Medical Assistance program [2] in Pennsylvania, notified appellant that the termination of the facility from the Medicare program automatically resulted in appellant's termination from the Medical Assistance program and that no new Medical Assistance patients could be admitted after February 15, 1984, with all Medical Assistance payments ceasing as of March 16, 1984.[3]

As nearly all of appellant's patients were Medical Assistance patients, appellant appealed DPW's termination of appellant's participation in the Medical Assistance program and requested that DOH, the state survey agency for both Medicare and Medical Assistance, resurvey the facility. On the basis of the resurvey conducted by DOH and a plan of correction submitted by appellant, DOH granted appellant a six month provisional license to operate, removed the suspension of new admissions, required the payment of a $4,500.00 fine, committed DOH to monthly monitoring visits of appellant's facility, and agreed to recommend to HHS that appellant "remain fully certified as a provider under the Medicare and Medical Assistance Programs." Settlement executed by DOH and Appellant (Reproduced Record at 87a–88a).

By letter dated March 8, 1984, DOH informed HHS that it was working closely with appellant to ensure compliance with all of the conditions of participation in the Medicare and Medical Assistance programs, and recommended that appellant continue to participate in the federal programs. There was no interruption of Medical Assistance payments by DPW to appellant at any time after March 16, 1984, and no effort was made by DOH or DPW to remove Medical Assistance patients from appellant's facility. In addition, DPW continued to routinely certify new Medical Assistance

2. Title XIX of the Social Security Act, Grants to States for Medical Assistance Programs, 42 U.S.C.A. §§ 1396–1396s (1990 Supp.Pamph.).

3. 42 C.F.R. 442.20(b).

patients for admission to appellant's facility. Findings of Fact, Adjudication and Recommendation of DPW Hearing Attorney (Reproduced Record at 98a).

By letter dated April 17, 1984, HHS informed DOH that appellant's participation in the Medicare and Medical Assistance programs had terminated as of February 15, 1984, and that therefore, unless appellant were to request readmission to the programs, DOH should not be conducting Medicare/Medical Assistance surveys at the facility. Appellant did not receive a copy of this letter, nor was appellant informed of the contents thereof. *Id.*, Reproduced Record at 99a. Appellant did, nevertheless, seek readmission to the Medicare program by letter dated April 19, 1984, addressed to DOH. By letter dated May 2, 1984, DOH responded to the April letter from HHS and noted that DOH's handling of appellant's facility was consistent with a policy of keeping such facilities open where possible as set forth in guidelines previously provided by HHS to DOH. DOH further explained that appellant was in the process of appealing its termination and of completing new application papers. Appellant did not receive a copy of this correspondence. *Id.*

In support of appellant's application for readmission into the Medicare program, DOH again recommended to HHS that appellant be permitted to participate in the Medicare and Medical Assistance programs. However, by letter dated November 8, 1984, addressed to appellant, HHS denied appellant readmission into the Medicare program and informed appellant for the first time that the state was still evaluating its termination of appellant's Medical Assistance agreement. By letter dated November 13, 1984, DPW notified appellant that it had been ineligible to receive Medical Assistance payments as of February 15, 1984, and that DPW would seek to recover Medical Assistance payments made to appellant after February 15.[4] Appellant

4. Appellant sold its skilled nursing care facility on August 15, 1984, but, by contract, remained responsible for any possible overpayments made by DPW before that date.

filed an appeal from this action, and a DPW Hearing Attorney recommended that the appeal be sustained on the basis of the doctrine of estoppel. The Office of Hearings and Appeals rejected this recommendation and denied appellant's appeal. On appeal, Commonwealth Court affirmed. 122 Pa.Cmwlth. 207, 551 A.2d 1138. We granted appellant's petition for allowance of appeal, and we now reverse.

■ Commonwealth Court's standard of review in an appeal from a decision of an administrative agency is limited to determining whether the agency's adjudication is in violation of the constitutional rights of the appellant, an error of law has been made by the agency, or the agency's findings of fact are not supported by substantial evidence. 2 Pa.C.S.A. § 704 (Purdon Supp.Pamph.1990); *Commonwealth, Commission on Charitable Organizations v. Association of Community Organizations for Reform Now*, 502 Pa. 1, 463 A.2d 406 (1983).

■ The doctrine of estoppel is an equitable remedy that may be asserted against the government in this jurisdiction. *See, e.g., Commonwealth, Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979); *see also Philadelphia v. Anderson*, 142 Pa. 357, 21 A. 976 (1891) (estoppel lies against city where city official responsible for certifying tax records on real property erred in certifying that subject property was unencumbered by unpaid taxes). Commonwealth Court herein correctly noted that the elements of estoppel are 1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel. 122 Pa.Cmwlth. 207, 214, 551 A.2d 1138, 1141–42, *citing, Commonwealth, Department of Public Welfare v. Town Court Nursing Centers, Inc.*, 97 Pa.Cmwlth. 380, 509 A.2d 950 (1986), *allocatur denied*, 515 Pa. 595, 528 A.2d 603 (1987).

■ There is no dispute that DPW mislead appellant into believing that, after March 16, 1984, it was still eligible to participate in the Medical Assistance program in that 1) DPW continued to reimburse appellant for the skilled nursing care of its Medical Assistance patients; 2) DPW never made any effort to remove Medical Assistance patients from appellant's facility;[5] and 3) DPW continued to send additional Medical Assistance patients to appellant's facility. Moreover, DOH never informed appellant that HHS considered its termination of appellant from the Medicare program (participation in which was essential to participation in the Medical Assistance program) in February of 1984 to be irrevocable; and appellant fully complied with the terms of the settlement agreement, which compliance DOH had led appellant to believe would result in appellant's continued participation in the Medical Assistance program. According to the Commonwealth Court, however, appellant's reliance upon these agencies' actions was unreasonable because the payments being made by DPW were in derogation of statutory law and appellant had a duty to know what the law was. This determination was erroneous.

Appellant was in constant communication with the agencies responsible for administering and monitoring compliance with the Medicare and Medical Assistance programs in this Commonwealth during the period at issue, and appellant did everything required to bring conditions at its facility into compliance with the law. These agencies by their conduct lulled appellant into the false belief that appellant's participation in the Medical Assistance program was not in jeopardy, so long as appellant continued to comply with the

5. Federal law currently requires that Medicare and Medical Assistance patients be transferred by the state once a skilled nursing facility has been terminated as a Medicare or Medical Assistance provider. 42 U.S.C.A. § 1395i–3(h)(4) (Supp.Pamph.1990); 42 U.S.C.A. § 1396r(h)(5) (Supp.Pamph.1990). Although this requirement was not in effect in 1984, it would have been reasonable for appellant to conclude that it continued to be a participant in the Medicare and Medical Assistance programs in that the state made absolutely no effort to remove Medicare and Medical Assistance patients from appellant's facility after appellant was terminated from those programs.

terms of the settlement reached between appellant and DOH in March of 1984. Appellant did comply with the terms of the settlement. Under these circumstances, it would be unconscionable to require appellant, after fully cooperating with the agencies responsible for knowing the law and seeing that the law is obeyed, to pay back the funds that were provided for the care of patients who cannot pay for appellant's services.

Although it is the general rule that estoppel against the government will not lie where the acts of its agents are in violation of positive law, *Central Storage & Transfer Co. v. Kaplan*, 487 Pa. 485, 410 A.2d 292 (1979), this rule cannot be slavishly applied where doing so would result in a fundamental injustice. It would clearly be a fundamental injustice to hold appellant herein responsible for the cost of caring for its Medical Assistance patients. The agencies that administer the welfare programs in this Commonwealth have a duty to deal fairly and justly with those who assume the task of caring for our indigent citizens. Appellant relied in good faith upon the misleading conduct, silence and misrepresentations on the part of DOH and DPW in providing skilled nursing care to nearly one hundred Medical Assistance patients, who were sent to appellant *by DPW* for care, and appellant did everything possible to inquire into and to protect its status as a participant in the Medical Assistance program.

Accordingly, we reverse the order of the Commonwealth Court which affirmed the decision of the Office of Hearings and Appeals.

McDERMOTT, J., did not participate in the consideration or decision of this matter.