CAMERON MANOR, INC., Petitioner,

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1996.

Decided June 14, 1996.

Reargument Denied July 30, 1996.

As Amended Aug. 2, 1996.

Reargument Denied Sept. 27, 1996.

and Appeals (OHA) and denied payment to Cameron of the federal share of Medical Assistance (MA) reimbursement for 4,332 days of long-term inpatient care provided to MA patients for the period from October 16, 1986 through February 13, 1987, during which time Cameron was decertified from participation in the MA program.

The primary question presented, as stated by Cameron, is whether Cameron is entitled to reimbursement from DPW, under common law contract theories of implied consent, promissory estoppel, quasi-contract or unjust enrichment and equitable estoppel for the 4,332 long-term inpatient days of care provided to MA patients, where the Department of Health (DOH) directed Cameron to continue service and DPW twice promised payment for these services. Cameron also questions whether DPW's June 2, 1995 final order is invalid in that it does not actually set forth its factual and legal basis, it is unsupported by substantial evidence and it is arbitrary and capricious; and whether Cameron's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated by DPW's final order denying reimbursement to Cameron for the fair value of patient days provided to MA patients pursuant to DPW directions.

I.

In the calendar year 1986 and before, Cameron participated in the Commonwealth's MA program as a licensed provider of long-term inpatient intermediate care services, at Cameron's 120–bed nursing home facility in Indiana, Pennsylvania. In 1986 Cameron began having trouble complying with both state and federal MA certification requirements.[1] Although DOH did not revoke Cameron's nursing home license, DPW did decertify Cameron from MA participation for the period from October 16, 1986 through February 12, 1987. DPW's decertification letter states in part:

Alan M. Kaplan, for Petitioner.

Jason W. Manne, Assistant Counsel, for Respondent.

Before DOYLE and SMITH, P.JJ., and RODGERS, Senior Judge.

SMITH, Judge.

Cameron Manor, Inc. (Cameron) petitions for review of the June 2, 1995 final order of the Executive Deputy Secretary of the Department of Public Welfare (DPW) that reversed a decision of the Office of Hearings

---

1. The record indicates that in an unrelated criminal matter, Cameron had pleaded guilty to violating Section 1407(a)(1) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 3 of the Act of July 10, 1980, P.L. 493, 62 P.S. § 1407(a)(1), relating to knowingly submitting false MA claims, and was sentenced, inter alia, to pay restitution to DPW in the amount of $80,000. *See* DPW's Ex. No. 2.

This is to notify you that the Pennsylvania Department of Public Welfare is issuing an Order to Show Cause against the [sic] Cameron Manor. The issuing of this Order has been necessitated by the facility's failure to comply with applicable federal statutes and regulations regarding participation in the Medical Assistance Program, 55 Pa.Code § 1101.77(a)(1). Because of these violations, the Medical Assistance Intermediate Care Facility Agreement cannot be renewed. The expiration date was July 31, 1986.

On August 21, 1986, the Department of Health, which is the survey agency for reviewing Medical Assistance participation requirements, informed the Department of Public Welfare that your facility did not meet these requirements. This report, which details the deficiencies, is attached hereto and incorporated by reference. Effective thirty (30) days from the date of this letter, you may no longer receive payments under the Medical Assistance Program for intermediate care and services. It is your responsibility to assure the safe and orderly transfer of all Medical Assistance residents to facilities certified to provide the appropriate level of care.

DPW's Order to Show Cause of September 15, 1986.

Evidentiary hearings were held before the Attorney Examiner during which both parties presented evidence. John A. Parse, DPW's Attorney Examiner, made the following findings of fact. Although DPW's order directed Cameron to relocate the MA patients by mid-October 1986, DOH contacted Cameron in response to Cameron's inquiries about what to do with the patients. During the period of its MA decertification, DOH twice instructed Cameron not to relocate the MA patients. In fact, DOH granted Cameron a partial lifting of the ban on admissions and granted two consecutive six-month provisional licenses to provide long-term health care.

The Attorney Examiner also found that DPW was aware of Cameron's continuing provision of MA services and that Secretary Walter Cohen met with Cameron's president, who advised Secretary Cohen of the situation. Secretary Cohen then assured Cameron's president that, if what he said was true, Cameron would be paid. Further, Secretary John White, Cohen's 1987 successor, also promised Cameron that it "would get its money" for the MA patients. The Attorney Examiner noted that these facts are unrefuted. In November 1987 DPW made an interim payment to Cameron for the period from October 1986 to February 1987 in the amount of $65,000. In a DPW in-house memorandum to its Comptroller, Assistant Counsel Bruce G. Baron, stated: "These funds are to be drawn from State Funds Only, and represent a State Share on services rendered during this period." DPW's Packet Ex. No. 1, DPW Memorandum, Assistant Counsel to Comptroller, November 4, 1987. DPW, however, refused to reimburse Cameron's federal share for 4,332 patient days at Cameron's per diem rate of $42.82, a total amount of $190,377.72.

In written decisions dated February 18, 1994 and February 18, 1995, the Attorney Examiner twice determined that DPW was equitably estopped from denying MA reimbursement to Cameron.[2] After issuance of the Attorney Examiner's second adjudication, which was adopted by OHA in its entirety, DPW sought a second reconsideration. On June 2, 1995, without taking any further evidence, the Executive Deputy Secretary reversed OHA's decision and denied Cameron MA reimbursement for the period at issue. Cameron petitions this Court for review of that order.

## II.

One of Cameron's theories of recovery is that DPW is equitably estopped from denying MA reimbursement to Cameron under the circumstances of this case. In *Chester Extended Care Center v. Department of Pub-*

---

**2.** The Attorney Examiner also determined that Cameron was entitled to recovery on the quasi-contract ground of quantum meruit (unjust enrichment) as well under the theory of unlawful confiscation of property in violation of Cameron's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

*lic Welfare,* 526 Pa. 350, 586 A.2d 379 (1991), the Supreme Court reviewed a similar case, where a nursing facility sought to recover approximately $250,000 in payments for the care of MA patients during a five-month period in 1984 when its participation in the MA program had been terminated.[3]

The Supreme Court reiterated in *Chester Extended Care Center* that the doctrine of estoppel is an equitable remedy that may be asserted against the Commonwealth. The Supreme Court noted that the three elements of estoppel are misleading words, conduct or silence by the party against whom the estoppel is claimed; unambiguous proof of reasonable reliance upon the misrepresentation by the party claiming the estoppel; and the lack of a duty to inquire on the party claiming the estoppel. In that case the Court determined that DPW misled the nursing facility into believing that it was still eligible to participate in the MA program by continuing to make MA payments, never making any effort to remove MA patients from the facility and continuing to send patients to it. The facility in *Chester Extended Care Center* also relied on representations by DOH that it was still in compliance with the MA program. Commonwealth Court, however, held that the facility's reliance on DPW and DOH actions was unreasonable because the payments made by DPW were in derogation of statutory law.

The Supreme Court reversed on the ground that DPW and DOH lulled the facility into the false belief that its participation in the MA program was not in jeopardy so long as it continued to comply with the terms of its settlement with DOH. The Supreme Court noted that, although the general rule is that estoppel will not lie against the government where the acts of its agents are in violation of positive law, it would clearly be a fundamental injustice to hold the facility responsible for the cost of caring for its MA patients. The Supreme Court further noted that the agencies that administer the welfare programs in this Commonwealth have a duty to deal fairly and justly with those who assume the task of caring for the Commonwealth's indigent citizens.[4]

Further, in *Department of Public Welfare v. Town Court Nursing Center, Inc.,* 97 Pa. Cmwlth. 380, 509 A.2d 950 (1986), *appeal denied,* 515 Pa. 595, 528 A.2d 603 (1987), this Court held that DPW was estopped from denying a nursing home's claim for MA benefits despite the facility's lack of federal certification for a certain period. The facility in that case had relied upon oral and written representations from DPW that it was approved to provide MA services. The former federal Department of Health, Education and Welfare, however, found subsequent deficiencies and rescinded its certification. The Court determined that DPW could not rescind the provider agreement after the services were performed by the nursing facility.

■ DPW contends that Cameron's contractual arguments are waived because Cameron did not raise them before the Secretary. The OHA, however, based its decision in favor of Cameron on equitable estoppel in accordance with *Chester Extended Care* and *Town Court Nursing Center, Inc.* Cameron was not required to raise these issues before the Secretary where DPW was the party seeking reconsideration. Pursuant to 1 Pa. Code § 35.241(c), Cameron was entitled to file an answer to DPW's request for reconsideration, which Cameron did. As a consequence, these issues have not been waived.

■ In applying the rationale in *Chester Extended Care Center* and *Town Court Nursing Center, Inc.* to the facts in the present case, this Court concludes, as did the

---

3. In *Chester Extended Care Center* the Supreme Court, citing 2 Pa.C.S. § 704, stated that the Commonwealth Court's scope of review of an administrative agency is limited to determining whether the agency's findings of fact are supported by substantial evidence, whether an error of law has been made by the agency or whether the agency's adjudication is in violation of the constitutional rights of the appellant.

4. DPW attempts to distinguish *Chester Extended Care* on the ground that the federal regulations that govern the present case place relocation responsibility upon the patient and the facility, whereas the prior regulations placed relocation responsibility upon the state. Despite the change in regulations, DPW in the present case was aware that Cameron continued to provide services to MA patients and promised Cameron payment for those services.

Attorney Examiner and the OHA, that DPW is equitably estopped from denying Cameron full MA reimbursement for the patient care Cameron provided to MA patients during its period of decertification. In response to its numerous inquiries, Cameron was misled by several assurances from DOH that Cameron would not have to relocate the MA patients for the period at issue. In fact, DOH instructed Cameron to take no action to relocate the patients. In addition, DOH had given Cameron consecutive provisional licenses to provide long-term health care services and to admit new MA patients throughout 1986.

Cameron further relied on the assurances of Secretary White that Cameron would be paid for providing those MA services. This finding of fact is clearly supported by substantial evidence of record. Therefore, DPW's position that it cannot be bound solely on the basis of the representations of DOH is untenable. The record further indicates that Secretary Cohen assured Cameron's president that Cameron would be paid for these services. Cameron has thus established the necessary elements of equitable estoppel. Despite its inquiries regarding what to do with its MA patients, Cameron was misled by the representations of DOH and DPW into believing that it did not have to relocate the patients and that it would be reimbursed for providing services to them.

■ DPW argues in the alternative that, even assuming Cameron had established the elements of equitable estoppel, there is no fundamental injustice to Cameron because it is a convicted felon, which has pleaded guilty to defrauding the MA program of over $80,-000 during four fiscal years, including 1986. DPW cites *In re Francis Edward McGillick Foundation*, 406 Pa.Super. 249, 594 A.2d 322 (1991), *aff'd in part, rev'd in part on other grounds*, 537 Pa. 194, 642 A.2d 467 (1994), for the propositions that a party seeking equity must come before the court with clean hands and that one guilty of wrongdoing should be denied access to the court. The Court noted

that the doctrine of unclean hands applies only when the wrongdoing directly relates to the matter in controversy.

In the present case, DPW does not dispute that Cameron provided services to MA patients for the period in question. This is evidenced by the fact that DPW paid Cameron $65,000 for the Commonwealth's share of the MA reimbursement. As a result, this Court concludes that any wrongdoing by Cameron is not sufficiently related to its MA reimbursement claim, where Cameron was specifically assured that it would be paid for providing those services. In view of the foregoing, DPW is equitably estopped from denying Cameron full MA reimbursement for the period from October 16, 1986 through February 13, 1987. Consequently, the June 2, 1995 order of the Executive Deputy Secretary is reversed, and the February 18, 1995 order of the OHA is reinstated.[5]

### ORDER

AND NOW, this 14th day of June, 1996, the June 2, 1995 order of the Executive Deputy Secretary of the Department of Public Welfare is reversed, and the February 14, 1995 order of the Office of Hearings and Appeals is reinstated *subject to the qualification that DPW is not required to make payment in excess of the 4,332 patient days appealed by Petitioner.*

---

**5.** Having determined that DPW was equitably estopped from denying Cameron's request for MA reimbursement, this Court need not address the remaining contractual issues, as well as issues regarding either the sufficiency of DPW's final order or possible violations of Cameron's rights to due process under the Fifth and Fourteenth Amendments.