Glen Guadalupe,                                      :
                    Appellant                        :
                                                     :
          v.                                         :
                                                     :
Philadelphia Board of Pensions and                   :     No. 563 C.D. 2019
Retirement                                           :     Argued: November 12, 2020


BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE COVEY                                          FILED: December 8, 2020


          Glen Guadalupe (Appellant) appeals from the Philadelphia County Common Pleas Court's (trial court) April 4, 2019 order denying his appeal and affirming the Philadelphia Board of Pensions and Retirement's (Board) May 18, 2017 decision. Appellant presents one issue for this Court's review: whether the trial court erred by affirming the Board's May 18, 2017 decision to disqualify Appellant from receiving his City of Philadelphia (City) pension, where the Board was equitably estopped from concluding that Appellant had forfeited his City pension because of his obstruction of justice conviction. After review, we affirm.

          On April 19, 1982, Appellant was hired as a correctional officer in the Philadelphia Department of Prisons. On May 1, 2002, Appellant was convicted in federal court on obstruction of justice charges for actions directly relating to his City employment as a correctional officer. At the time of his conviction, Appellant was a Deputy Warden in a City jail. Appellant resigned from his City employment on the same day he was convicted. In June 2006, after serving his sentence, the City rehired Appellant at the Department of Licenses & Inspections (L&I). When

Appellant was rehired, an L&I employee informed Appellant that he would be placed back in the same pension plan as when he was a correctional officer. Throughout his nine-year L&I employment, Appellant received Board statements explaining updates to his City pension benefits and the amount Appellant was entitled to receive when he retired.

Appellant resigned from his L&I employment in 2015, pending an administrative hearing for potential conflicts of interest between his L&I employment and his extracurricular career as a realtor. On March 2, 2016, Appellant applied for and began to receive pension payments. On April 6, 2016, City Inspector General Amy Kurland (City IG) sent documents to the City Law Department and the Board requesting that Appellant be disqualified from receiving his City pension based on his May 1, 2002 conviction. The Board claimed this was the first time it was made aware of Appellant's City employment-related conviction. The City Law Department submitted a memorandum to the Board agreeing that Appellant should be disqualified from receiving a City pension.

On April 28, 2016, at a regularly scheduled meeting, the Board voted to disqualify Appellant and informed Appellant of the same by May 2, 2016 letter. Appellant filed a preliminary appeal on May 11, 2016, and the appeal was heard before Board panel members Brian Caughlin, William Rubin and Paula Weiss (Panel) on November 30, 2016, where Appellant was represented by counsel. At this hearing, Appellant conceded that he was disqualified from receiving City pension benefits, and that there was no time bar to the disqualification, except insofar as the Board was equitably estopped from denying those benefits because Appellant was sent City pension benefit updates and notices throughout his nine-year L&I employment.

The Panel recommended that the Board affirm Appellant's disqualification, which it did at its regularly scheduled meeting on May 18, 2017.

2

Appellant appealed from that decision to the trial court. On April 4, 2019, the trial court denied Appellant's appeal. On April 24, 2019, Appellant appealed to this Court.[1] On April 29, 2019, the trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Appellant filed his Rule 1925(b) Statement on May 20, 2019. The trial court filed its opinion on August 12, 2019.

Appellant argues that the Board was equitably estopped from claiming that he had forfeited his City pension. First, Appellant contends that the trial court erred when it limited its standard of review because the full standard allows a court to overturn an agency's decision if "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." Section 754(b) of the Administrative Agency Law, 2 Pa.C.S. § 754(b). Appellant asserts that the Board's decision to deny his City pension was not supported by substantial evidence. Second, Appellant insists that equitable estoppel applies because the Board made misrepresentations for more than a decade that caused him to believe he would receive his City pension when he retired; Appellant relied on those representations in deciding to continue working for the City and to retire early; and he had no duty to inquire further regarding his pension. Third, Appellant declares that equitable estoppel can be and has been applied to the Commonwealth of Pennsylvania (Commonwealth) to prevent fundamental injustice. Appellant claims that he has suffered a fundamental injustice when he was continually led to

---

[1] "This [C]ourt's scope of review [of the Board's decision], where the trial court takes no additional evidence, is limited to determining whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact were supported by substantial evidence." *Tepper v. City of Phila. Bd. of Pensions & Ret.*, 163 A.3d 475, 481 (Pa. Cmwlth. 2017) (quoting *Martorano v. Phila. Bd. of Pensions & Ret*., 940 A.2d 598, 600 n.3 (Pa. Cmwlth. 2008)).

3

believe he was entitled to his City pension before accepting a position where he worked for nine years.

The Board and the City (collectively, Appellees) rejoin that Appellant presented no evidence that anyone at the Board was told or was aware that Appellant committed a criminal offense that disqualified him from receiving a City pension. Appellees further contend that, even assuming Appellant could prove that the Board knew about his disqualifying offense and represented that he could still receive a City pension, equitable estoppel cannot apply to prevent the application of a statutory requirement. Specifically, Appellees declare that the Board must enforce the statute when it learns that an individual is disqualified from receiving City pension benefits, and Appellant concedes that he committed a disqualifying offense. In addition, Appellees claim that it was not fundamentally unjust to deny Appellant his City pension when he committed a serious criminal offense in attempting to cover up inmate abuse, and he failed to prove that it was fundamentally unjust to deny a City pension to an individual who has breached such public duties.

Initially, Section 3(a) of the Public Employee Pension Forfeiture Act, commonly referred to as Act 140,[2] provides:

> Notwithstanding any other provision of law, **no** public official or **public employee** nor any beneficiary designated by such public official or public employee **shall be entitled to receive any retirement** or other benefit or **payment of any kind** except a return of the contribution paid into any pension fund without interest, **if such** public official or **public employee is found guilty of a crime related to** public office or **public employment** or

---

[2] Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311-1315. Section 5 of the Act of March 28, 2019, P.L. 1, No. 1, provides that the amendment of Section 3(a), (b) and (d) of Act 140, 43 P.S. § 1313(a)-(b), (d), shall apply to crimes related to public office or public employment committed on or after March 28, 2019. As Appellant's crime was committed before March 28, 2019, all references to Section 3(a) of Act 140 refer to former Section 3(a) of Act 140.

pleads guilty or nolo contendere to any crime related to public office or public employment.

43 P.S. § 1313(a) (emphasis added). In addition, Section 22-1302 of the City's Public Employees Retirement Code (City Code) states, in relevant part:

> (1) Notwithstanding any other provision of this Title, **no employee** nor any beneficiary designated by or for any employee **shall be entitled to receive any retirement** or other benefit or **payment of any kind** except a return of contribution paid into the [City's Municipal] Retirement System, without interest, **if such employee**:
>
> (a) pleads or **is** finally **found guilty**, or pleads no defense, in any court, to any of the following:
>    . . . .
>
> (.5) **Malfeasance in** office or **employment**[.]

City Code § 22-1302 (emphasis added).

The law is well established that "[t]he purpose of [Act 140] is to deter criminal conduct in public employment by causing a forfeiture of pension benefits to which a public official or public employee would otherwise be entitled." *Luzerne Cnty. Ret. Bd. v. Seacrist*, 988 A.2d 785, 787 (Pa. Cmwlth. 2010). However, "[p]ension forfeiture is not favored and, thus, pension forfeiture statutes are strictly construed." *Wiggins v. Phila. Bd. of Pensions & Ret.*, 114 A.3d 66, 72 (Pa. Cmwlth. 2015).

Here, it is uncontested that Appellant was found guilty of a crime related to his public employment and, thus, his City pension was subject to forfeiture. The issue before this Court is whether the Board was equitably estopped from imposing said forfeiture. "[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity."

5

*Grimes v. Dep't of Educ.*, 216 A.3d 1152, 1160-61 (Pa. Cmwlth. 2019) (quoting

*Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983)).

> The doctrine of equitable estoppel may be applied to a [governmental] agency when the party asserting estoppel establishes that: (1) the agency negligently misrepresented a material fact; (2) the agency knew or had reason to know that the party would justifiably rely on the misrepresentation; **and** (3) the party acted to his or her detriment by justifiably relying on the misrepresentation.

*Forbes v. Pa. Dep't of Corr.*, 931 A.2d 88, 94 n.6 (Pa. Cmwlth. 2007) (emphasis

added); *see also Cicchiello v. Bloomsburg Zoning Hearing Bd.*, 617 A.2d 835 (Pa.

Cmwlth. 1992).

> Though,

> [t]he general rule is that estoppel against the Commonwealth[3] will not lie where the acts of its agents contravene statutory law. To do so would be tantamount to amending the statute. However, our [S]upreme [C]ourt has stated that this rule cannot be slavishly applied where doing so would result in a fundamental injustice.

---

[3]     [O]ur Supreme Court has stated:
> [T]he Commonwealth **or its subdivisions and municipalities** cannot be estopped by 'the acts of its agents and employees if those acts are outside the agents' powers, in violation of positive law, or acts which require legislative or executive action.'

*Central Storage & Transfer Co. v. Kaplan*, . . . 410 A.2d 292 at 294 ([Pa.] 1979) (quoting *Kellams v. Public Sch*[.] [*Emps' Ret*[.] [*Bd.*], . . . 403 A.2d 1315, 1318 ([Pa.] 1979)).

*Carroll v. City of Phila., Bd. of Pensions and Ret. Mun. Pension Fund*, 735 A.2d 141, 145 (Pa. Cmwlth. 1999) (emphasis added).

6

*Forbes*, 931 A.2d at 94 (citations omitted). Here, the Board would clearly violate Section 3(a) of Act 140 and Section 22-1302 of the City Code if it were to permit Appellant to receive his City pension.

Appellant first asserts that the Board's findings of facts 40, 41 and 46 were not supported by substantial evidence. In those findings, the Board declared:

> 40. The Board found Appellant's testimony not credible overall.
>
> 41. The Board found that Appellant presented no credible evidence to support his contention that his superiors at L&I were fully aware of the circumstances of his prior conviction and resignation.
>
> . . . .
>
> 46. The Board found that Appellant's submission of boilerplate correspondence from [the Board], did not support a conclusion that the Board misled him, and that his certificate from the [M]ayor congratulating him on his 25 years of service to the City, was not proof of anything other than that he had logged 25 years working for the [City].

Reproduced Record (R.R.) at 215-216 (internal record citations omitted).[4]

"As the ultimate fact[-]finder, the Board has the authority to resolve evidentiary conflicts and to make all necessary credibility determinations." *Merlino v. Phila. Bd. of Pensions & Ret.*, 916 A.2d 1231, 1234 n.5 (Pa. Cmwlth. 2007). Further, "this Court may not substitute its judgment for that of the Board which is the sole fact-finder, determiner of credibility, and assigner of weight to the testimony[.]" *Hinkle v. City of Phila.*, 881 A.2d 22, 28 (Pa. Cmwlth. 2005).

---

[4] Appellant did not comply with Pennsylvania Rule of Appellate Procedure 2173, which mandates: "[T]he reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc.[]" Pa. R.A.P. 2173. The opinion references Appellant's numbering for consistency.

7

Here, the only evidence Appellant submitted to support his contention that his superiors at L&I were fully aware of the circumstances of his conviction and resignation was his own testimony. The Board found Appellant's testimony not credible overall, which was clearly within its province. Similarly, regarding the Board's correspondence and the Mayor's letter, the Board, as fact-finder, was permitted to determine the weight to be given those documents. This Court may not substitute its judgment for that of the Board.[5]

Notwithstanding, had the Board credited Appellant's testimony that his superiors at L&I were fully aware of the circumstances of his conviction and resignation, "the knowledge of L&I as to [Appellant's conviction] may not be imputed to [the Board] for the purpose of enforcing [Act 140]. [L&I] ha[s] no jurisdiction over the administration of [City pension] requirements, and [is a] completely separate municipal agent[] from [the Board]." *Colelli v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 571 A.2d 533, 535 (Pa. Cmwlth. 1990).

Appellant next argues that equitable estoppel applies because: no one from the Board or the City informed Appellant that his conviction could disqualify him from City pension eligibility; all City employees involved continually acted for 14 years as if he was eligible for the same pension as the day the City first hired him; Appellant reasonably relied on the Board's inducement in deciding to stay at L&I for 9 years and electing to retire at age 53; and Appellant had no duty to inquire further on the question of his pension eligibility, particularly in light of the assurances he received from the Board.

---

[5] Appellant also claims that the trial court erred by not analyzing whether the Board's findings were supported by substantial evidence. It is clear from the context of the trial court's opinion, which noted the multiple documents the Board received and the Board's evaluation of Appellant's credibility and the content of his testimony, that the trial court was aware of the evidence presented and found that substantial evidence supported the Board's decision. Nevertheless, the trial court's standard of review is not before this Court because the Court is reviewing the Board's decision, not the trial court's decision.

The Board opined in its Conclusions of Law:

> 19. Specifically, the Board concluded that Appellant's argument that the Board was estopped from determining that Appellant had forfeited his [City p]ension was meritless, where[,] as set forth above[,] Appellant's conviction severed his entitlement to his [City p]ension and where the Board had no knowledge of his conviction until [the City IG] asked the Board to consider disqualifying him in 2016.
>
> 20. The Board rejected the argument that it had engaged in 'misleading words, conduct or silence' where it had no knowledge of Appellant's conviction prior to 2016.

R.R. at 221.

Concerning Appellant's claim that no one from the Board or the City informed him that his conviction could disqualify him from City pension eligibility, courts regularly presume an individual's knowledge of the law. *See, e.g.*, *Del Borrello v. Dep't of Pub. Welfare*, 508 A.2d 368, 371 (Pa. Cmwlth. 1986) ("[A] health provider is charged with knowledge of applicable [health care] regulations."); *see also Cnty. of Lehigh v. Lerner*, 475 A.2d 1357, 1359 (Pa. Cmwlth. 1984) ("The ancient legal maxim that all of us are presumed to know the law must prevail."). Furthermore, "[p]ossible ignorance of the law does not excuse" a party's actions that may result in injury to the party. *Finney v. Unemployment Comp. Bd. of Rev.*, 472 A.2d 752, 753-54 (Pa. Cmwlth. 1984). Accordingly, Appellant cannot establish that he "justifiably rel[ied]" on the Board's alleged negligent misrepresentation that he was entitled to receive a City pension. *Forbes*, 931 A.2d at 94 n.6. Consequently, "[t]he doctrine of equitable estoppel may [not] be applied to [the Board]." *Id.*

Moreover,

> [t]he relationship between a public [] employee and the [Board] is contractual in nature. *Apgar v. State [Emps.'] Ret. Sys.*, 655 A.2d 185 (Pa. Cmwlth. 1994). Section 3(a) of [Act 140] provides for the mandatory disqualification

9

and forfeiture of benefits upon 'conviction[] or plea[] of guilty or no defense to any crime related to public office or public employment.' [43 P.S. § 1313(a).] Section 3(b) [of Act 140] provides that the conviction or plea is a breach of the public employee's contract with his employer. In order to receive retirement benefits, an employee must satisfy all of the conditions precedent such as minimum retirement age and requisite years of service. *See Thelin v. Borough of Warren*, . . . 544 A.2d 1135 ([Pa. Cmwlth.] 1988) (stating that an employee's pension rights vest when he has satisfied all prerequisites under the plan). An additional condition precedent for eligibility to receive pension benefits is that an employee cannot have been convicted [of any crime related to public employment]. *Commonwealth v. Abraham*, . . . 58 A.3d 42, 49 . . . [(Pa.), *republished*, 62 A.3d 343 (Pa. 2012)]. Such a conviction breaches the employee's contract and renders him ineligible to receive pension benefits.

*Scarantino v. Pub. Sch. Emps.' Ret. Bd.*, 68 A.3d 375, 385 (Pa. Cmwlth. 2013).

Notwithstanding whether the Board was estopped from imposing the forfeiture, the Board's payment of a City pension to Appellant would violate Section 3(a) of Act 140 and Section 22-1302 of the City Code. Thus, the Board could only pay Appellant his City pension if not doing so would result in a fundamental injustice. *Forbes*. Appellant declares that not paying him his City pension would result in a fundamental injustice and cites *Chester Extended Care Center v. Department of Public Welfare*, 586 A.2d 379 (Pa. 1991), to support his position.

The issue before the *Chester Extended Care Center* Court was

whether the appellee, Commonwealth of Pennsylvania, Department of Public Welfare (DPW), [was] estopped by its conduct from recovering approximately $250,000[.00] in payments made to the appellant, Chester Extended Care Center, for the care of Medical Assistance patients at appellant's skilled nursing facility during a five[-]month period in 1984, after appellant's participation in the Medical Assistance program had been terminated.

*Chester Extended Care Center*, 586 A.2d at 380.

The Pennsylvania Supreme Court opined therein:

**There is no dispute that DPW misle**[]**d** [**the**] **appellant** into believing that, after March 16, 1984, it was still eligible to participate in the Medical Assistance program in that 1) DPW continued to reimburse appellant for the skilled nursing care of its Medical Assistance patients; 2) DPW never made any effort to remove Medical Assistance patients from appellant's facility; and 3) DPW continued to send additional Medical Assistance patients to appellant's facility. Moreover, [the Commonwealth of Pennsylvania, Department of Health (]**DOH**[)] **never informed appellant that** [**the United States Department of Health and Human Services** (]**HHS**[)] **considered its termination of appellant from the Medicare program** (participation in which was essential to participation in the Medical Assistance program) in February of 1984 **to be irrevocable**; and **appellant fully complied with the terms of the settlement agreement, which compliance DOH had led** [**the**] **appellant to believe would result in** [**the**] **appellant's continued participation in the Medical Assistance program**. According to the Commonwealth Court, however, appellant's reliance upon these agencies' actions was unreasonable because the payments being made by DPW were in derogation of statutory law and appellant had a duty to know what the law was. This determination was erroneous.

*Id*. at 382 (emphasis added).

Our Supreme Court explained:

[The a]ppellant was in constant communication with the agencies responsible for administering and monitoring compliance with the Medicare and Medical Assistance programs in this Commonwealth during the period at issue, and [the] appellant did everything required to bring conditions at its facility into compliance with the law. These agencies by their conduct lulled [the] appellant into the false belief that appellant's participation in the Medical Assistance program was not in jeopardy, so long as appellant continued to comply with the terms of the settlement reached between [the] appellant and DOH in March of 1984. [The a]ppellant did comply with the terms of the settlement. **Under these circumstances, it would**

11

**be unconscionable to require [the] appellant, after fully cooperating with the agencies responsible for knowing the law and seeing that the law is obeyed, to pay back the funds that were provided for the care of patients who cannot pay for [the] appellant's services**.

*Id*. at 382-83 (emphasis added).

The *Chester Extended Care Center* Court reversed this Court and expounded:

It would clearly be a fundamental injustice to hold [the] appellant herein responsible for the cost of caring for its Medical Assistance patients. The agencies that administer the welfare programs in this Commonwealth have a duty to deal fairly and justly with those who assume the task of caring for our indigent citizens. [The a]ppellant relied in good faith upon the misleading conduct, silence and misrepresentations on the part of DOH and DPW in providing skilled nursing care to nearly one hundred Medical Assistance patients, who were sent to appellant *by DPW* for care, and [**the**] **appellant did everything possible to inquire into and to protect its status as a participant in the Medical Assistance program**.

*Id*. at 383 (bold emphasis added).

While Appellant herein may or may not have been misled by the Board into believing that his conviction did not disqualify him from receiving a City pension, this Court cannot conclude that it would be in any way comparable to the fundamental injustice that the appellant in *Chester Extended Care Center* would have suffered if the appellee was not estopped from recovering approximately $250,000.00 in payments made to the appellant, for the care of Medical Assistance patients at the appellant's skilled nursing facility during the five-month period in 1984, after the appellant's participation in the Medical Assistance program had been terminated.

First, Appellant herein is not being required to repay any amount. Second, Appellant did not do everything possible to inquire into and protect his

12

status as a City pensioner. Indeed, Appellant never mentioned his reason for separation from the Department of Corrections, i.e., a conviction directly related to his employment, to either L&I or the Board, *see* Notes of Testimony, November 30, 2016 at 28 (Q. "Did you ever notify anybody at L&I about [why your employment was terminated]?" A. "Well I checked off the box on the initial application that I had a conviction, which is all it asked on the application."), much less inquire as to whether his conviction, which was directly related to his City employment, would affect his City pension. Finally, neither L&I nor any other City department sought to hire Appellant or encouraged him to work there based on a City pension. Rather, Appellant applied for L&I employment in the hopes of being placed into his original City pension plan. Although Appellant inquired into his City pension plan, and attended a City pension seminar, Appellant never revealed his public employment-related conviction. The fact that the Board did not become aware of Appellant's public employment-related conviction until after Appellant retired from L&I does not change the circumstance that Appellant's public employment-related conviction disqualifies him from receiving a City pension.

> Significantly, the Pennsylvania Supreme Court elucidated:

> Th[e] Court, in assessing [Act 140's] legislative history, has noted [Act 140] was designed to 'promote integrity in public employment by imposing a forfeiture provision that would deter acts of criminal misconduct, thereby encouraging public employees to maintain standards of conduct deserving of the public's trust.' *Mazzo v.* [*Bd.*] *of Pensions* [*&*] *Ret*[.] *of City of Phila*[.], . . . 611 A.2d 193, 196 ([Pa.] 1992); *see Shiomos v.* [] *State Emp*[*s.'*] *Ret*[.] [*Bd.*], . . . 626 A.2d 158, 163 ([Pa.] 1993) ('**It is neither unconscionable nor unreasonable to require honesty and integrity during an employee's tenure in public service**.'). The Commonwealth Court has also described [Act 140's] purpose as promoting the public's trust in its employees and sanctioning employees who violate that trust. *See Apgar* . . . , 655 A.2d [at] 189 . . . ('**Because**

13

**criminal conduct committed in the course of one's employment is a violation of the trust the people of the Commonwealth place in their employees, such conduct shall not be sanctioned**.').

Additionally, the discussion on [**Act 140**] when it was pending as a bill demonstrates its **aim of preventing those who violate the public's trust from receiving the benefit of a taxpayer-funded pension**: 'What these amendments essentially are doing is drawing distinction between the high standard of conduct and the violation thereof that is incumbent on elected public officials. . . . In my travels throughout the Commonwealth, I have found that that is what is most prominent in the minds of our citizens.' 1978 S. J. Vol. I, p. 448 (Statement of Senator Kelley). . . .

Thus, [Act 140's] aim is to ensure accountability and address corruption; it is triggered by an employee's breach of the public employment contract by commission of a very specific class of crimes. An employee who breaches his contract forfeits his right to deferred compensation for services rendered in the past. *See Mazzo*, [611 A.2d] at 196 ('[I]t has long been recognized in this Commonwealth that pensions for public employees are not mere gratuities provided by the employer, but rather are deferred compensation for services rendered in the past.') (citing *Commonwealth ex rel. Zimmerman v. Officers* [*&*] *Emp*[*s.'*] *Ret*[*.*] [*Bd.*], . . . 469 A.2d 141, 142 ([Pa.] 1983) (plurality opinion collecting cases)). Entitlement to the compensation that is deferred, however, is not without conditions, the relevant one being that the employee not commit any of the enumerated crimes.

**Not getting money as a consequence of breaching an employment contract cannot be equated** [**to a fundamental injustice**].

*Abraham*, 62 A.3d at 349-50 (emphasis added; footnote omitted).

Because this Court concludes that the Board denying Appellant his City pension would not result in a fundamental injustice, equitable estoppel does not apply.

14

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glen Guadalupe,                          :
                      Appellant          :
                                :
            v.                        :
                                :
Philadelphia Board of Pensions and       :       No. 563 C.D. 2019
Retirement                               :

## O R D E R

AND NOW, this 8th day of December, 2020, the Philadelphia County Common Pleas Court's April 4, 2019 order is affirmed.


_____
ANNE E. COVEY, Judge