## Kathleen M. MALONEY

v.

Francis T. MALONEY and Mark Vasoli, Borough Manager Borough of Yeadon and Jacquelynn Puriefoy–Brinkley Borough Council President Borough of Yeadon and John F. Byrne, Borough Council Vice–President Borough of Yeadon and Glenn Ellis, Sr., Council Member Borough of Yeadon and Patricia Evans, Council Member Borough of Yeadon and Stanley B. Lindner, Council Member Borough of Yeadon and Ivory N. Taliaferro, Council Member Borough of Yeadon and Sharon O. Council, Council Member Borough of Yeadon and Borough of Yeadon, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 6, 2000.
Decided May 1, 2000.
Reargument Denied July 12, 2000.

Daniel J. McCuskee, Media, for appellants.

C. Barry Buckley, West Chester, for appellee.

Before PELLEGRINI, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

LEADBETTER, Judge.

The Borough of Yeadon, its Borough Manager and Council Members (collectively "Borough"),[1] appeal from the order of the Court of Common Pleas of Chester County, which held the Borough in contempt pursuant to Section 3502(e)(9) of the Divorce Code[2] and directed the Borough to comply with both the final divorce decree and subsequent Domestic Relations Order (DRO) entered in the divorce action involving Francis Maloney, a retired Borough police officer. The trial court's order further provided that the Borough was subject to a penalty of $100.00 per day for each day that it failed to "qualify and implement" the DRO as directed. After review, we reverse.

Kathleen Maloney and Francis Maloney were divorced in September 1997. As a result of Francis' employment with the Borough's police force during the marriage, Francis had collected a monthly pension benefit since his retirement. Pursuant to the terms of the Maloneys' divorce decree, Kathleen was awarded "50% of Francis' pension from the Yeadon Borough Police Department in the form of a Qualified Domestic Relations Order...." *Maloney v. Maloney*, No. 94–03450 (C.C.P.

---

**1.** Mark Vasoli serves as Borough Manager and Jacquelynn Puriefoy–Brinkley, John F. Byrne, Glenn Ellis, Sr., Patricia Evans, Stanley B. Lindner, Ivory N. Taliaferro and Sharon O. Council serve as members of the Borough Council.

**2.** 23 Pa.C.S. § 3502(e)(9). Section 3502(e)(9) authorizes the court to find a party in contempt for failure to comply with an order of equitable distribution entered in an action in divorce.

Chester Cty., September 23, 1997), R. 1a.[3] In October 1998, the trial court entered a DRO, which provided that Kathleen, as the alternate payee, was entitled to 50% of Francis' accrued pension under the Borough's Police Pension Plan. The DRO was sent to the Borough for implementation, but, Francis died in April 1999 before that occurred. However, until his death, Francis himself paid Kathleen 50% of his monthly pension benefit. Following Francis' death, the Borough refused to make any payments to Kathleen, contending that under the terms of the applicable pension fund ordinance, Kathleen, as an ex-spouse, is not entitled to survivor's benefits. Specifically, Section 284.05 of the Borough's Police Pension Fund Ordinance provides:

If a member is killed in service before becoming eligible to retire, or if a retired member or an active member eligible to retire dies, then the member's spouse, or if no spouse survives or if the spouse survives and subsequently dies or remarries, then the child or children under the age of [18], shall, during the lifetime of the spouse or so long as the spouse does not remarry or a child remains under the age of [18], be entitled to receive a pension calculated at the rate of seventy-five percent of the pension the retiree was receiving or the member would have been receiving had he or she been retired, assuming he or she was eligible to retire, at the time of his or her death....

In an effort to reinstate payment of a monthly pension benefit, Kathleen joined the Borough as a party in the divorce action and filed a petition for special relief, enforcement and contempt, seeking to hold the Borough in contempt as well as an order directing the Borough to "implement the DRO." The trial court granted Kathleen's petition, concluding that Kathleen's entitlement to benefits derived from the equitable distribution provisions of the Divorce Code and not from her status as a surviving spouse under the Ordinance. The present appeal then followed.

■ Preliminarily, we note that Kathleen has objected to the exercise of jurisdiction by this court and has filed a motion to transfer the matter to the Pennsylvania Superior Court. Pursuant to Section 762(a)(4)(i)(B) of the Judicial Code, 42 Pa. C.S. § 762(a)(4)(i)(B), this court has exclusive jurisdiction of appeals from final orders of the courts of common pleas in actions involving the application, interpretation or enforcement of any local ordinance. Contrary to Kathleen's assertion, this matter involves the application and interpretation of the Borough's Police Pension Fund Ordinance because the Borough's refusal to make any payments to Kathleen after Francis' death is based upon its contention that Kathleen does not qualify for benefits under the terms of the ordinance. Therefore, jurisdiction over this matter properly lies with this court.[4]

On appeal, the Borough contends that the trial court erred in granting Kathleen's

---

**3.** Generally, a qualified domestic relations order, or "QDRO," is defined as:

a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the [pension] plan. To be "qualified," the order must contain certain required information and may not alter the amount or form of plan benefits.

Berrington v. Berrington, 534 Pa. 393, 397 n. 3, 633 A.2d 589, 591 n. 3 (1993), quoting Wilder, Mahood, and Greenblatt, Pa. Family Law Practice and Procedure (2d ed), § 14–10. A DRO is:

a judgment, decree or order, including approval of a property settlement agreement by the court, which relates to the provision of child support, alimony payments or marital property rights of a spouse, former spouse, child or other dependent of a [pension] plan participant and is made pursuant to a state domestic relations law.
Id. at n. 4, 633 A.2d at 591 n. 4.

**4.** See generally Millick v. Millick, 140 Pa. Cmwlth. 252, 592 A.2d 788 (1991); Osser v. City of Philadelphia, 295 Pa.Super. 447, 441 A.2d 1317 (1982), rev'd on other grounds by, 506 Pa. 339, 485 A.2d 392 (1984).

petition for special relief and holding it in contempt because under the terms of its Ordinance, an ex-spouse is not entitled to survivor's benefits. According to the Borough, its position is not that the DRO should not be implemented, but that upon Francis' death, Francis' entitlement to a monthly pension benefit ceased and any right Kathleen had to receive a portion of that benefit ended as well. The Borough further argues that not only does its Ordinance not entitle an ex-spouse to survivor's benefits, but that there is no other legal authority that creates that right. We agree with the Borough that in these circumstances, Kathleen is not entitled to receive a portion of Francis' accrued pension following his death.

■ Bearing in mind that this appeal arises from a citation for contempt, we begin with the observation that the DRO entered by the trial court does not appear to direct the Borough to do anything; rather, it merely acknowledges that Kathleen is entitled to 50% of Francis' pension. Moreover, unlike the State Employes' Retirement System, the Public School Employes' Retirement System, and private, non-governmental plans subject to the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, *as amended* by the Retirement Equity Act of 1984, 29 U.S.C. § 1056, there does not appear to be any applicable statutory authority imposing an obligation upon the Borough to approve, disapprove or otherwise act upon receipt of a DRO.[5] Therefore, without a clear directive in the DRO itself and no statutory authority imposing an obligation upon the Borough to take specific action upon receipt of the DRO, we conclude the trial court erred in finding the Borough in contempt for refusing to comply with the DRO.

■ Next, we conclude that the trial court erred in ordering the Borough to "qualify and implement" the DRO after Francis' death, at least to the extent such order is construed (as the trial court clearly intended) to require the continued payment of pension benefits to Kathleen. In support of this result, both the trial court and Kathleen erroneously rely upon a body of appellate caselaw stemming from *Young v. Young,* 507 Pa. 40, 488 A.2d 264 (1985). These cases have held that an anti-alienation or anti-attachment provision in a pension plan cannot preclude the attachment of pension benefits either to satisfy the terms of an order effecting equitable distribution of marital assets or to provide for support of a former spouse. However, in each of these cases, the courts are enforcing a DRO that merely divides the benefits that the member of the pension plan is entitled to receive under the terms of the applicable plan. *Young* and the other cases relied upon do not involve the creation of rights or benefits beyond those provided by the pension plan. The trial court in the instant case, however, is altering the benefit scheme of the plan and ordering the Borough to pay a benefit not previously contracted for. Specifically, the trial court is ordering the Borough to pay survivor benefits to an ex-spouse when such benefits have not been provided for in the Ordinance. Although we are sympathetic to Kathleen's situation, *Young* and its progeny simply do not support the trial court's decision and our research has failed to reveal any other authority which allows a trial court, in the context of a divorce action, to alter the benefit scheme of a pension plan. Indeed, the existing statutory provisions governing pension benefits and DROs usually provide that a DRO shall be qualified or approved only if it requires the plan to provide a benefit or option already provided for by the plan

---

5. For instance, 71 Pa.C.S. § 5953.1, which is applicable to State employees, provides that upon receipt of a DRO, the secretary of the State Employes' Retirement Board shall determine within a reasonable period of time

whether the order meets the requirements for approval and notify the member and alternate payee of the determination. *See also* 24 Pa. C.S. § 8533.1 and 29 U.S.C. § 1056.

and requires the plan to provide no more than the total amount of benefits that the member would otherwise be entitled to receive. *See, e.g.,* 71 Pa.C.S. § 5953.1; 24 Pa.C.S. § 8533.1. Accordingly, the trial court erred in ordering the payment of continued benefits to Kathleen following Francis' death.

For the foregoing reasons, the order of the trial court is reversed.

## *O R D E R*

AND NOW, this 1st day of May, 2000, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby reversed.